**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LINDA ARCHIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:09CV506-WHA |
| | ) | |
| HOME-TOWNE SUITES, LLC, | ) | (WO) |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #37), filed by the Defendant on September 15, 2010, a Motion to Strike (Doc. #45), filed by the Defendant on October 13, 2010, and a Request for Oral Argument (Doc. #46) filed by the Defendant on October 13, 2010.[1]

The Plaintiff filed a Complaint in this case on May 29, 2009, bringing claims of age discrimination in violation of the Age Discrimination in Employment Act, 28 U.S.C. § 621 *et seq*. ("ADEA"); gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended; and state law claims for fraudulent inducement and negligent training and supervision.[2]  The Plaintiff alleges, and the court finds, that it has federal question subject matter

---

[1]  The Defendant requests oral argument if the court determines that such argument would be beneficial.  The parties have thoroughly briefed the issues, and the court finds that oral argument is not necessary to resolve the Motion for Summary Judgment.

[2] The Plaintiff concedes her negligent training and supervision claim is not supported by evidence, and that summary judgment is due to be GRANTED as that claim.  Doc. #42, p. 21.

jurisdiction over the federal claims, and may exercise supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

Upon consideration of the briefs and evidence submitted by the parties, viewed in a light most favorable to the non-movant, and for the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED as to the federal claims, and the court will decline to exercise supplemental jurisdiction over the remaining state law claim.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. *Chapman v. A1 Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000) (*en banc*).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Linda Archie ("Archie"), was a 49-year-old female at the time of the events in question.  Archie had been employed as a manager of a Motel 6 in Jacksonville, Florida.  She had been employed with Motel 6 for twelve years.  Archie wanted to return to the east Alabama area where her family was located, and engaged in discussions with representatives of Home-Towne Suites, L.L.C. ("Home-Towne") about an employment opportunity at a Columbus, Georgia property.  Archie contends that Robert Rowan ("Rowan"), District Manager, promised her a General Manager position at the Home-Towne Columbus, Georgia motel, which was under construction.

Archie was interviewed by the manager of Home-Towne's Kingsland, Georgia motel. She was then interviewed by Rowan and visited the Columbus, Georgia site with him in person. During the on-site meeting in Columbus, Rowan told Archie that the Columbus property was the property he was interviewing her for, and asked Archie whether she planned to live in the on-site apartment, or commute. Archie had additional interviews by telephone.

Archie was hired by Home-Towne on June 25, 2007. Rowan called her to tell her that she had been hired. He did not say at that time that she would have the General Manager position at the Columbus location when it opened, but told her to report to the Auburn property to fill out her paperwork and that he wanted her to work with the General Manager there for a while. In July 2007, Rowan requested that Archie go to the Bowling Green, Kentucky motel property to address "clean and green" operations issues. Archie was offered an operations manager position at Bowling Green, but turned it down. Archie also worked at a Prattville, Alabama property.

During her employment with Home-Towne, Archie attended a training session in Lexington, Kentucky at which Mike Tetterton ("Tetterton"), the President and Chief Executive Officer of Home-Towne, was present.

In October 2007, Tetterton made the decision to hire Steve Bovaird, a man who at the time of his hire was 44 years old, to be the General Manager, and to hire a woman named Nilsa Perez to be Sales Manager, at the motel at the Columbus, Georgia location. Archie Dep. at page 203: 11-12.

Home-Towne states that it had legitimate, non-discriminatory reasons for selecting Bovaird instead of Archie because Bovaird had prior extended stay motel experience and sales experience and abilities, whereas Archie did not.

On October 22, 2007, Archie was assigned to the Columbus location to help prepare for the hotel's opening. On November 29, 2007, Tetterton informed Archie that her existing position was being eliminated, and that she could either be paid for 30 days while she found a new position, stay in the position performing "clean and green" functions with two weeks' notice before that position was eliminated, or take an available operations manager position in Dallas, Texas. Archie chose the first option and was paid by Home-Towne through December 2007.

## IV. DISCUSSION

Archie brings federal age and gender discrimination claims, and a state law claim for fraudulent inducement. Before the court addresses the grounds raised by Home-Towne for summary judgment on the merits of Archie's claims, the court first turns to the Motion to Strike to determine what, if any, evidence submitted should be stricken, as requested by Home-Towne.

### A. Motion to Strike

Home-Towne has objected to Archie's evidence on grounds that it is not relevant, the evidence is hearsay,[3] the evidence does not satisfy the best evidence rule, and the evidence is conclusory.

---

[3] While Home-Towne has stated that Archie has offered hearsay evidence, the court does not find within Home-Towne's motion where any hearsay statements have been identified. Therefore, the court finds that no evidence is due to be stricken on the basis of hearsay.

As to relevance, Home-Towne objects that evidence of Archie's Motel 6 experience, designation as "General Manager" on a Home-Towne employment form, her argument that no one at Home-Towne inquired of her sales experience, her argument regarding hotel experience, and evidence of offered comparators' prior experience are all irrelevant. The court concludes that the evidence identified meets the standard of having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Civ. Proc. 401. The Motion to Strike is due to be DENIED to the extent it is based on relevance grounds.

Home-Towne also objects to its EEOC position statement and Archie's statement of the three options she was given by Tetterton at the time of her termination, on the grounds that they violate the best evidence rule, because the best evidence of Tetterton's options is a statement by Tetterton, presented as Attachment 9 to Tetterton's Affidavit. Archie does not dispute that Tetterton's statement "speaks for itself," *see* Doc. #48 at p. 7, so the court will consider that document, rather than other evidence regarding its content, and the Motion to Strike is due to be DENIED as moot in that respect.

Many of Home-Towne's objections are to statements by Archie in brief which Home-Towne contends are not supported by record evidence or which are "conclusory." The court will only rely on evidence cited, and the reasonable inferences which can be drawn in the non-movant's favor from that evidence, so arguments which Home-Towne contends are not based on that evidence will not be considered, and the Motion to Strike is due to be DENIED to the extent that it is based on such grounds.

Home-Towne also objects to the authentication of documents which are from the personnel files of persons hired as General Managers by Home-Towne. Archie responds that the records were produced by Home-Towne in discovery, and are on Home-Towne forms. Home-Towne replies that Archie calls the documents' authenticity into question by providing only selected portions of the documents produced. Home-Towne does not cite any authority, however, for the idea that proffering only a portion of evidence provided in discovery undermines the authenticity of that evidence. To the extent that Home-Towne objects to personnel records it produced on the grounds of authentication, the Motion to Strike is due to be DENIED. *See, e.g., U.S. for Use of Ben. of WFI Ga., Inc. v. Gray Ins. Co.*, 701 F. Supp. 2d 1320, 1332 (N.D. Ga. 2010) (considering documents produced by opposing party during discovery in ruling on motion for summary judgment).

B.  Federal Discrimination Claims

Generally, where, as here, the plaintiff seeks to prove intentional discrimination by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). As the Home-Towne points out, however, even if a plaintiff establishes a prima facie case and offers sufficient evidence of pretext as to each of the proffered reasons, summary judgment "will sometimes be available to an employer in such a case." *Chapman v. AI Transp.*, 229 F.3d 1012, 125 n.11 (11th Cir. 2000).

There have been some recent developments in the area of law regarding discrimination on the basis of age. The ADEA provides, in part, that it shall be unlawful for an employer to refuse to hire any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's age. 29 U.S.C. § 623(a)(1). The United States Supreme Court has recently clarified that the text of the ADEA does not authorize a "mixed-motives" age-discrimination claim and that, "to establish a disparate-treatment claim under the plain language of the ADEA, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Serv., Inc.*, __U.S. __, 129 S. Ct. 2343, 2349-50 n. 2 (2009). In other words, the causation standard outlined in *Gross* is a "but for" causation standard which requires a plaintiff to prove that a challenged employment decision would not have occurred but for the defendant's consideration of a protected category. *Gross*, 129 S. Ct. at 2350 (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* 265 (5th ed. 1984)). While *Gross* requires "but for"

8

causation for ADEA claims, Title VII claims require that the plaintiff prove that the protected characteristic was a "substantial or motivating factor" in the employment decision. *Dudley v. Wal-Mart Stores*, Inc., 166 F.3d 1317, 1322 (11th Cir. 1999). A plaintiff does not have to prove "but for" causation to establish a Title VII claim.

The Supreme Court did not answer in *Gross* whether the traditional *McDonnell Douglas* framework should still be applied in ADEA cases. *Gross*, __U.S. __, 129 S. Ct. at 2349 n.2 (stating "the Court has not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), utilized in Title VII cases is appropriate in the ADEA context."). The Eleventh Circuit has continued to apply *McDonnell Douglas* analysis in ADEA cases. *See Licausi v. Symantec Corp.*, 378 Fed. Appx. 964, 965 (11th Cir. 2010); *Armbrester v. Talladega City Bd. of Educ.*, 325 Fed. Appx. 877, 879 n.4 (11th Cir. 2009); *see also Puckett v. McPhillips Shinbaum*, No. 2:06cv1148, 2010 WL 1729104 at *7 & n.5 (M.D. Ala. March 30, 2010). Therefore, the court will apply the traditional *McDonnell Douglas* standard, with an eye toward determining whether a question of fact has been created as to whether age was a "but for" cause, or gender was a substantial or motivating factor, in the adverse employment actions challenged by Archie.[4]

---

[4] Home-Towne has argued that Archie cannot proceed on both claims under *Gross*. The court recognizes that there are courts which have interpreted *Gross* to require an election of remedies by plaintiffs. *See, e.g., Culver v. Birmingham Bd. of Educ.*, 646 F. Supp. 2d 1270 (N.D. Ala. 2009) (Acker, J.). Other courts have declined to so. *See, e.g., DeAngelo v. Dentalez, Inc.*, No. 09-535, 2010 WL 3488609 at *5 (E.D. Pa. Sep. 2, 2010) (collecting cases).

As stated above, *Gross* requires "but for" causation. It has long been the law that there is a difference between "but for" causation and "sole" causation. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n.10 (1976) (distinguishing sole causation from but for causation); *see also McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1076 (11th Cir. 1996) (same). *Gross* refers only to "but for" causation. *Gross*, 129 S.Ct. at 2350.

It appears to the court, therefore, that even after *Gross*, a plaintiff might prove that gender

9

### 1. Age Discrimination Claims

Turning to the merits of claims asserted by Archie for violation of the ADEA, Home-Towne contends that Archie cannot establish a prima facie case of discrimination under the ADEA, nor prove that its articulated reasons are pretext and that age discrimination was the real reason.

Although it is somewhat unclear whether she intends to assert multiple age discrimination claims, it appears that Archie is asserting both a failure to hire claim, and an unlawful discharge claim.

#### a. Failure to Hire

Archie's primary claim in this case stems from Home-Towne's failure to place her in the General Manager's position at the Columbus motel property, once that property was open for business.

#### i. Prima Facie Case

A plaintiff establishes a prima facie case of age discrimination by demonstrating that (1) she was a member of the protected group of persons between the ages of forty and seventy; (2) she was subject to adverse employment action; (3) a substantially younger person filled the position that she sought; and (4) she was qualified to do the job for which she was rejected. *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir. ), *cert. denied*, 525 U.S. 962 (1998).

---

discrimination was a substantial or motivating factor in an adverse employment action, satisfying the standard for the Title VII claim, but also show that if it had not been for her age, she would not have been terminated, satisfying the ADEA standard, so that no election of remedies is required.

Home-Towne states that Archie cannot establish the fourth element of her prima facie case because she was not qualified for the General Manager position that she sought, because she lacked experience with an extended stay hotel chain, whereas the person hired, Bovaird "had proven sales experience with an extended stay motel chain."  Doc. #38 at p. 15.  Such an argument goes to the relative qualifications of the persons considered for the position, rather than to the issue of basic qualification for the position and, therefore, will be considered in the context of pretext, rather than the prima facie case.  *See Walker v. Mortham,* 158 F.3d 1177, 1190 (11th Cir. 1998) (stating that relative qualifications should not be considered in the first stage of the *McDonnell Douglas* framework).

As to her qualifications, Archie points out that she had ten years of prior experience and that Home-Towne thought she was qualified when she was interviewed for the Columbus, Georgia position by the Kingsland General Manager, Richard Zaks; the regional manager, Robert Rowan; and two members of the executive office.   Archie has also offered evidence of the work experience of other General Managers to demonstrate that she was qualified for the position of General Manager.  Archie points to Gary Randolph's employment application, a Home-Towne General Manager, which states that his previous experience was with the U.S. Army, as a sales manager with Appliance Factor Warehouse, and most recently, as the manger and general manager of restaurants.  Pl.'s Ex. #12.

Home-Towne does not agree that the comparator evidence is relevant, arguing that Home-Towne required only sales experience, rather than specifically motel sales experience.  The court agrees with Home-Towne that it can lawfully exercise business judgment to require "sales experience," outside of the motel industry.   The job description for General Manager,

11

however, states that "sales experience in the hotel industry" is preferred. Def.'s Ex. D, attachment 2. Such evidence supports Archie's position that she had relevant experience. Furthermore, upon review of the comparator evidence presented in this case, the court concludes that there is a question of fact as to the scope of the sales experience qualification for a General Manager position.

The court recognizes that Tetterton has stated in his affidavit that Home-Towne was looking prospectively to make a change toward having General Managers with sales abilities. *See* Tetterton Aff. at ¶ 27. Given evidence of Archie's experience, and the other General Manager's qualifications, however, the court concludes that there is a question of fact as to whether Archie was at least minimally qualified for a General Manager position.

ii. Archie's Evidence of Pretext

As previously stated, Home-Towne has articulated the reason that Bovaird had proven sales experience, and Archie did not. Tetterton also separately states that previous extended stay motel experience was considered. *See* Tetterton Aff. at ¶ 30. As noted above, Tetterton explained in his affidavit that the company was taking a new direction of moving toward General Managers who were sales-driven. *Id.* at ¶27. Tetterton further stated that as part of that change in direction by the company, Home-Towne decided to create a Director of Sales Position. *Id.* Tettterton also explained that as the company was preparing to open the Columbus, Georgia location, he determined that he would personally be responsible for staffing the hotel to ensure it began operations in the new direction of the company. *Id.* at ¶¶ 27, 28. Tetterton stated that he based his evaluation of Bovaird's experience on Bovaird's employment at Residence Inn, a

12

direct competitor of Home-Towne, which would give him contacts and ability to bring new business. *Id.* at ¶ 30. He also stated that he based his decision on Bovaird's demonstrated sales ability and traits as demonstrated during his interview. *Id.*

With regard to Archie, Tetterton stated that Archie did not have the ability to "'sell' the hotel in the way that would be required to make the Columbus property successsful." *Id.* at ¶ 29. He stated that in his experience, lower end motel managers have operational experience, rather than sales experience. *Id.* at ¶ 15. Tettterton also stated that Archie did not have sales ability based on what he had personally observed of Archie. *Id.* at ¶ 24. Tetterton stated that he observed her to be quiet and timid. *Id.* at ¶ 23. He explained that he made an eight-hour presentation in a Lexington, Kentucky training session, and that during the presentation Archie looked "confused and even lost about the basic fundamentals of sales." *Id.* He stated that she did not contribute to the discussion and did "not appear engaged." *Id.*

Archie does not offer evidence of age-based comments to prove pretext, but instead offers evidence to demonstrate that the reasons given for the failure to hire her as a General Manager are not worthy of credence. "[I]t is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not" based on membership in a protected group. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1341 (11th Cir. 2000). It is not enough, therefore, for Archie to simply argue that Home-Towne should not have placed a premium on Bovaird's sales experience when it rejected Archie for the position.

Archie's primary argument appears to be that Tetterton's description of her sales abilities as compared to Bovaird's is not worthy of credence because there is no factual basis for his comparison. Archie states that she had sales experience at the time she was interviewed for the

position, and that Home-Towne did not investigate her sales experience. While Archie characterizes Tetterton's affidavit as "self-serving," Archie acknowledges that she was present for the Lexington training, and that she met with Tetterton in what was "more or less like another interview." *See* Archie Dep. at 157: 16-17.[5] Archie points to her deposition testimony that during the training session discussed by Tetterton, she was asked about her likes and dislikes, and the questions were "to get to know you." *Id.* She does not point to any evidence to dispute that Tetterton made a sales presentation during which she was present. The court cannot conclude, therefore, that Archie's evidence is sufficient to create a question of fact as to the factual basis for Tetterton's offered opinion of Archie's sales abilities.

Archie further contends that there is no evidence that Home-Towne was aware of Bovaird's sales experience at the time of its decision to hire him, because his resume was composed after his employment with Home-Towne had commenced. As noted above, however, Tetterton stated in his affidavit that he based his evaluation of Bovaird's experience on Bovaird's employment with Residence Inn, and the traits Bovaird demonstrated during his interview. Archie has pointed the court to no evidence to dispute that Tetterton had personal knowledge of Bovaird's experience and abilities through Bovaird's interview. The court cannot conclude, therefore, that Archie has sufficiently demonstrated that Tetterton's explanation of his decision to hire Bovaird over Archie is unworthy of credence.

Archie has also pointed to the sales experience of other General Managers hired by Home-Towne as evidence of pretext. While the court agreed, as discussed above, that such

---

[5] Because Archie disputes that she had an earlier conversation with Tetterton, the court has only considered evidence concerning Archie's interaction with Tetterton at the Lexington, Kentucky training. Whether they spoke earlier is not a substantial question of material fact.

evidence creates a question of fact as to whether Archie was minimally qualified for a General Manager position, for purposes of establishing a prima facie case, the qualifications of those persons do not undermine the articulated reasons for Bovaird's hire.  While Archie compares herself to those employees to demonstrate that she was as qualified as they were, that does not call into question Tetterton's testimony that he considered Bovaird to be better qualified than Archie because of his past sales experience in extended stay motels and his sales abilities. "[W]here an employee seeks to prove pretext through qualifications alone, the difference in qualifications must be so glaring that no reasonable impartial person could have chosen the candidate selected for the promotion in question over the plaintiff." *Vessels v. Atlanta Independent School System,* 408 F.3d 763, 772 (11th Cir. 2005).   The court cannot conclude that Archie's evidence meets that standard.

Considering all of the evidence in a light most favorable to the non-movant, the court cannot conclude that a reasonable jury could find by a preponderance of the evidence that but for Archie's age, she would have been hired as General Manager of Home-Towne's Columbus motel.  Summary judgment is, therefore, due to be GRANTED as to the failure to hire claim.

b.  Discharge

Home-Towne states that Archie cannot make out a prima facie case of discharge on the basis of age, because Archie's position was eliminated, but she was offered other positions for which she was qualified, but she did not accept them.  Home-Towne states that other than the options given Archie, there was no available position into which she could be placed.

Although it is not clear that Archie intended to state a separate claim in her Complaint based on her termination, she does argue in her brief that Home-Towne's explanation that her position was eliminated is not credible because Kelly Lasley, Craig Barnett, and Damon Mastrianni were employees who held floating manager positions during the relevant time, and their positions were not eliminated. Home-Towne's evidence, however, is directed specifically at Archie's position. Tetterton states that it did not make financial sense to continue to employ Archie when Home-Towne had General Managers in place. Tetterton Aff. at ¶ 32. The evidence presented is that an option presented to Archie was to continue in her position until the work ran out, whereupon she would receive two weeks' notice, which she declined. Therefore, even Archie's position was not immediately eliminated, but would terminate when the work was completed. The continued employment of other floating managers, therefore, does not create a question of fact as to whether Archie's position was eliminated. Tetterton affirmatively states in his affidavit that because Archie's position was eliminated, no one replaced her. *Id.* at ¶ 37. Archie has pointed to no evidence to the contrary.

Of the persons pointed to by Archie as holding positions which were not eliminated, it appears that only Craig Barnett was hired soon after Archie's termination. His employment application, however, states that he applied to be a "Field Assignment Manager," not a floating manager. Pl. Ex. #16. Archie does not contend that she held the position of Field Assignment Manager, nor present evidence that she was qualified for such a position. The court concludes, therefore, that Archie has failed to create a question of fact as to whether her position was eliminated.

16

A variant of the *McDonnell Douglas* prima facie case applies where a position is eliminated; namely, (1) that the plaintiff was in a protected age group and was adversely affected by an employment decision; (2) that she was qualified for her current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue. *Earley v. Champion Int'l. Corp.,* 907 F.2d 1077, 1082 (11th Cir. 1990). "Where a particular job position is entirely eliminated for nondiscriminatory reasons, for a plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough." *Id.*

The evidence of other floating managers presented by Archie concerns evidence of persons already employed. The mere fact that other floating managers were employed by Home-Towne at the time her position was eliminated is not sufficient to establish that a separate position existed into which Archie could have been placed. *See id.* at 1083 (stating evidence of positions open before the plaintiff's termination or well after their termination does not establish that there was an available job).

Archie also contends that the court should not look to evidence regarding "floating manager" positions at all, because Archie was a General Manager. Tetterton states in his affidavit that Archie actually was hired as a "floating manager," which, according to Tetterton, is a manager assigned to a hotel in which there was already a General Manager to work with the General Manager, or while a General Manager was on vacation. Tetterton Aff. at ¶ 12. Tetterton states that the designation of "General Manager" on Archie's employment application under "position you are seeking," and "Job Title" was a designation made by Archie, and the

17

new hire form is not signed off on by Home-Towne. *See id.* at ¶ 13. Archie's reference to the designation of General Manager on her paper work does not establish, therefore, that a position existed at the time of her termination into which she could have been placed. Even if the court were to accept Archie's characterization of her employment, Archie has not shown that a General Manager position existed into which she could have been hired at the time her position was eliminated. The court cannot conclude, therefore, that Archie has made out a prima facie case of age discrimination based on her termination. *See Earley*, 907 F.2d at 1083 (stating that "Earley failed to establish, and would seemingly not be able to establish at trial, that a position for which he was qualified was available in the company at the time Champion terminated his employment."). Therefore, to the extent that Archie has asserted a separate claim alleging that she was terminated on the basis of her age, summary judgment is due to be GRANTED on such a claim, because a reasonable jury could not find that but for her age, Archie would not have been terminated.

### 2. Gender Discrimination

Although as discussed above, the ultimate issues for the jury in determining a Title VII claim, governed by a substantial or motivating factor standard, and an ADEA claim, governed by a "but for" standard, are different, the *McDonnell Douglas* burden shifting analysis is the same in this case, because both the age and gender claims are based on the hiring of the comparator Bovaird. As discussed above, Archie has failed to create a question of fact sufficient to call into question the reasons articulated for Bovaird's hire, based on the relative qualifications of Bovaird and Archie, and summary judgment is due to be GRANTED as to her claim for failure to hire her on the basis of her sex. Summary judgment is further due to be GRANTED to the

18

extent that a separate termination on the basis of sex claim has been stated, because Archie has failed to establish that a position existed into which she could have been hired at the time she was offered employment options.[6]

### C. State Law Claim--Fraudulent Inducement

The only state law claim Archie continues to assert is one for fraudulent inducement. Home-Towne argues that Archie cannot establish the elements of such a claim.

The court having concluded that summary judgment is due to be GRANTED as to all of the federal law claims asserted in this case, the court declines to exercise supplemental jurisdiction over the remaining state law claim, pursuant to 28 U.S.C. § 1367(c). *See Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997).

### V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Request for Oral Argument (Doc. #46) is DENIED.

2. The Motion to Strike (Doc. #45) is DENIED in part and DENIED as moot in part as discussed above.

3. The Motion for Summary Judgment (Doc. #37) is GRANTED as to Archie's federal claims and her state law claim of negligent training and supervision.

---

[6] In addition, even if Archie had create a question of fact as to the credibility of all of the articulated reasons, this case presents one in which summary judgment would be due to be GRANTED, because the prima facie case is not particularly strong, relying on resolution of a question of fact, and the employer's evidence of the reasons for the employment action is strong. *See Reeves v. Sanderson Plumbing Prods, Inc.,* 530 U.S. 133, 148-49 (2000).

4.  The court declines to exercise supplemental jurisdiction, pursuant to § 28 U.S.C. § 1367(c), over the state law claim of fraudulent inducement and that claim is DISMISSED without prejudice.

A separate final Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 8th day of November, 2010.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE